1
2
3
4
5
6

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

7  IN RE:                                          Bankr. Case No. BK-S-19-10001-BTB

8  DATABASEUSA.COM LLC,

9  Debtor

10

11  INFOGROUP, INC.,                               Case No. 2:20-CV-1925 JCM

12                                   Plaintiff(s),            ORDER

13             v.

14  DATABASEUSA.COM, LLC, EVEREST
    GROUP, LLC,

15                                 Defendant(s).

16

17        Presently before the court is appellant Infogroup Inc.'s ("Infogroup") appeals of two

18  bankruptcy court orders.  (ECF Nos. 1; 23).  Appellees DatabaseUSA.com, LLC ("debtor") and

19  Everest Group, LLC ("Everest") (collectively "appellees") each filed responsive briefs (ECF

20  Nos. 30, 31), to which Infogroup filed a reply brief (ECF No. 41).

21        Also before the court is appellant Infogroup's appeals of two additional bankruptcy court

22  orders.  (ECF Nos. 42; 43; 60).  Appellees each filed responsive briefs (ECF Nos. 61; 63), to

23  which Infogroup filed a reply brief (ECF No. 65).

24  **I.     Background**

25        From 2012 until the bankruptcy petition was filed in 2019, Everest extended a revolving

26  line of credit to debtor, secured by all of debtor's assets.  (ECF Nos. 33-1 at 92, 95; 33-2 at 3–4).

27  In 2012, debtor borrowed $20 million and by 2017, debtor had borrowed $30 million from

28  Everest.  (ECF Nos. 33-1 at 95; 33-2 at 3).  From the end of 2013 through the end of 2017,

James C. Mahan
U.S. District Judge

1    debtor never had a total asset value more than $2,177,700.  (ECF Nos. 34-2 at 22, 28; 35-1 at

2    84).  Amendments to the promissory notes securing the credit were signed and executed in 2018

3    and back-dated.  (ECF No. 34-1 at 87–88).

4         In 2014, Infogroup sued debtor for copyright infringement.  Sometime between late 2014

5    and early 2015, debtor transferred the copyright infringing database asset to ResearchUSA LLC

6    ("ResearchUSA").  (ECF No. 23 at 26).  Prior to this, ResearchUSA was a wholly owned

7    subsidiary of debtor.  (*Id.*).  Debtor transferred its ownership of ResearchUSA as follows: 40% to

8    Everest, 20% to Vinod Gupta ("Gupta"), 20% to an Everest employee, and 20% to debtor's CEO

9    Fred Vakili ("Vakili").  (*Id.*).

10        In 2017, debtor counterclaimed with a commercial tort counterclaim but then agreed to

11   dismiss the claim with prejudice.[1]  (ECF No. 23 at 16).  In 2018, Infogroup obtained a judgment

12   against debtor for $11.2 million for copyright infringement and for $432,442.59 for court costs

13   and attorney fees.  (ECF No. 23 at 15).  On January 1, 2019, debtor filed its voluntary Chapter 11

14   petition in the U.S. Bankruptcy Court for the District of Nevada (the "bankruptcy court").

15        On February 20, 2019, debtor filed a motion pursuant to Federal Rule of Bankruptcy

16   Procedure 9019 to approve compromise and settlement between debtor and Everest (the

17   "compromise motion").  The compromise motion was premised on Everest and debtor

18   negotiating the validity of Everest's lien.  (ECF No. 31 at 24).  On February 24, 2020, Infogroup

19   filed a motion for authority to pursue claims against debtor's creditors, including Everest, on

20   behalf of the debtor's estate (the "authority motion").  Debtor also made a motion to increase the

21   amount of approved post-petition financing based on two stipulations contained in the

22   compromise.[2]

23

24   _____

25        [1] The commercial tort counterclaim serves as one the scheduled assets that debtor now
     claims at a value of $22,750,000.  (ECF No. 23 at 17).  Debtor's other scheduled asset is its
26   operating assets which it values at $2,183,798.23.  (*Id.*).

27        [2] The first stipulation provides that Everest "validly perfected its first priority security
     interest with respect to the Pre-Petition Collateral."  (ECF No. 23 at 18).  The second stipulation
28   provides that Everest's claim is unavoidable "pursuant to applicable state or federal laws
     (including, without limitation, the Bankruptcy Code)."  (ECF No. 23 at 19).

**James C. Mahan**
**U.S. District Judge**

In response to these motions relating to post-petition financing, Infogroup objected on the grounds that "Everest's pre-petition liens . . . cannot be maintained or supported on a variety of grounds, such as insider preferences and fraudulent transfers." (ECF No. 23 at 19). Infogroup then filed a second objection on the grounds that "[a]t an appropriate time, Infogroup intends to file a [m]otion with this [c]ourt seeking authority to bring various claims on behalf of the bankruptcy estate, including but not limited to avoidance claims against Everest's secured claims, avoidance claims involving other insiders." (*Id.*). Infogroup contends that these objections are its first two demands which are typically requisite to prevail on an authority motion. (ECF No. 23 at 53).

Infogroup asserts that it made a third demand in its authority motion when it included the following: "As a matter of form, Infogroup hereby demands that Debtor bring the claims identified above against Everest, Gupta, ResearchUSA and the Insider Transferees. Infogroup notes, however, that Debtor is irreconcilably conflicted on all such claims because of its insider status with the proposed defendants and its prior waivers of claims, so it cannot not [sic] reasonably or logically comply with such form demand." (ECF No. 23 at 21 (quoting the authority motion)).

On September 17, 2020, the bankruptcy court issued an oral ruling to grant the compromise motion (the "compromise order") and to deny the authority motion (the "authority order"). On October 8, 2020, the bankruptcy court entered the compromise order and authority order on the docket.[3]

Infogroup timely filed an appeal of those orders to this court (ECF No. 1) and obtained a stay of the authority order from the bankruptcy court. (*See* ECF No. 60 at 14). However, while its initial appeals remained pending, Infogroup filed a derivative action in defiance of the authority order. (*See id.* at 15). One month later, on debtor's motion, the bankruptcy court held Infogroup in contempt of the court for violating the automatic bankruptcy stay and the authority order. (*See id.* at 16–17).

---

[3] Which are essentially the written versions of the September oral rulings.

James C. Mahan
U.S. District Judge

1    Soon after, Infogroup filed a motion for reconsideration of the bankruptcy court's holding

2    it in contempt.  (*See id.* at 18).  Then, on April 9 and 13, 2021, the bankruptcy court entered

3    written orders (collectively, the "contempt and sanction orders") granting debtor's request for

4    sanctions and denying Infogroup's motion for reconsideration.  Specifically, it ordered Infogroup

5    to pay "[d]ebtor's attorney fees . . . in the amount of $22,294.00" and to "dismiss the [adversary]

6    [c]omplaint and vacate all pending matters in the [a]dversary [p]roceeding."  (*See id.* at 19).

7    Infogroup appealed both orders.  (ECF Nos. 42; 43).

8    The court now reviews Infogroup's appeals of the authority order, the compromise order,

9    and the contempt and sanction orders.[4]

10    **II.    Legal Standard**

11    Federal district courts have appellate jurisdiction over the final judgments, orders, and

12    decrees of the bankruptcy court.  28 U.S.C. § 158(a)(1); *In re Frontier Props., Inc.*, 979 F.2d

13    1358, 1362 (9th Cir. 1992).  A bankruptcy court's factual findings are reviewed for clear error

14    and its interpretation of bankruptcy law is reviewed de novo.  *Hedlund v. Educ. Res. Inst. Inc.*,

15    718 F.3d 848, 854 (9th Cir. 2013).  Mixed questions are reviewed de novo.  *In re Bammer*, 131

16    F.3d 788, 792 (9th Cir. 1997).

17    A bankruptcy court's order to approve a compromise is reviewed for an abuse of

18    discretion.  *In re A&C Props.*, 794 F.2d 1377, 1380 (9th Cir. 1986).  A bankruptcy court's order

19    to deny an authority motion is reviewed for abuse of discretion.  *In re Consolidated Nevada*

20    *Corp.*, BAP No. NV-17-1210-FLTi, 2017 WL 6553394, at *4 (9th Cir. BAP Dec. 21, 2017).

21    Under abuse of discretion review, the bankruptcy court's order is not reversed unless there was a

22    clear error of judgment.  *Goodwin v. Mickey Thompson Entm't Grp., Inc.*, 292 B.R. 415, 420 (9th

23    Cir. BAP 2003).  A court can abuse its discretion if there is a "definite and firm conviction that

24    the trial court committed clear error of judgment in the conclusion that it reached based on all of

25    the appropriate factors."  *In re Murray, Inc.*, 392 B.R. 288, 296 (9th Cir. BAP 2008).  The

26

27    _____

28    [4] Pursuant to Federal Rule of Bankruptcy Procedure 8019, the court determines that oral argument is unnecessary because the facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument.

1    question to ask if whether a reasonable person could agree with the bankruptcy court's decision.

2    *Id.*

3    **III.    Discussion**

4            Infogroup appeals concern three central decisions: the denial of its motion for authority to

5    pursue claims of the bankruptcy estate (the "authority order" re the "authority motion") (ECF

6    No. 1 at 7–8), the approval of appellees' motion to approve compromise and settlement between

7    debtor and Everest Group (the "compromise order" re the "compromise motion") (ECF No. 1 at

8    15–16), and the holding it in contempt for filing the adversary complaint (the "contempt and

9    sanctions orders" re the "contempt motion" and "motion for reconsideration") (ECF Nos 42; 43).

10           The issues for the authority order are whether the bankruptcy court erred when it denied

11   Infogroup's authority motion by 1) finding that there was "no evidence that Infogroup, Inc. made

12   the requisite demand to debtor to take the actions in its proposed Complaint and that Debtor

13   thereafter declined to do so," and 2) failing to apply the doctrine of futility which would negate

14   the requisite demand.

15           The issues for the compromise order are whether the bankruptcy court erred when it

16   approved debtor's compromise motion by 1) failing to apply the rigorous scrutiny standard, and

17   2) finding that the settlement was fair and equitable.

18           The main issue for the contempt and sanctions orders is whether the bankruptcy court had

19   the jurisdiction or authority to hold Infogroup in contempt.  However, the preliminary issue is

20   whether this court has the jurisdiction to review the contempt and sanctions orders.[5]

21           Consistent with the following, this court VACATES the authority order, REVERSES the

22   compromise order, DISMISSES the appeals of the contempt and sanctions orders, and

23   REMANDS this matter to the bankruptcy court for further proceedings on the authority motion.

24           A.   The bankruptcy court abused its discretion by denying the authority motion without
                  considering demand futility

25           Infogroup first argues that the bankruptcy court abused its discretion by applying the

26   wrong legal standard when it found that Infogroup could not pursue derivative actions because it

27

28

_____

        [5] Though parties dispute what is at issue for this appeal, these four issues encompass the
gravamen of their arguments.

did not make any demands.  (ECF No. 23 at 51–54).  Infogroup next argues that the bankruptcy court abused its discretion by failing to apply the doctrine of futility which negates the requisite demand.  (ECF No. 23 at 54–56).

A creditor may be able to bring a derivative suit.  *In re Parmetex, Inc.*, 199 F.3d 1029, 1031 (9th Cir. 1999).  However, the suit first belongs to the debtor-in-possession ("DIP").  *Estate of Spirtos v. One San Bernardino Cnty. Superior Ct.*, 443 F.3d 1172, 1175 (9th Cir. 2006).  To support that a creditor has this right to bring a derivative suit, 11 U.S.C. § 1123(b)(3)(B) and 11 U.S.C. § 522(f) & (h) have been interpreted to allow avoidance powers to be assigned to someone other than the DIP.  *In re P.R.T.C., Inc.*, 177 F.3d 774. 780–81 (9th Cir. 1999).

Under Federal Rule of Civil Procedure 23.1, the party seeking derivative standing must "allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors."  *Potter v. Hughes*, 546 F.3d 1051, 1056 (9th Cir. 2008) (citing *Smith v. Sperling*, 354 U.S. 91, 96–97 (1957)).  If the demand is insufficient in content or to whom it was presented, then the court must inquire whether there is demand futility.  *Greenspun v. Del E. Webb Corp.*, 634 F.2d 1204, 1209 (9th Cir. 1980).

### 1. The bankruptcy court used the correct legal standard to determine that Infogroup failed to make a demand

Infogroup argues that the bankruptcy court used the wrong legal standard in denying the authority motion.  (ECF No. 23 at 51–52).  Specifically, it argues that the bankruptcy court failed to apply the "mere formality" standard to determine whether its objections to the compromise motion and its language in paragraph twenty-two of the authority motion constitute demands.  (*Id.*).

For derivative authority determinations, bankruptcy courts in the Ninth Circuit have applied variations of the Sixth Circuit's *In re Gibson Grp., Inc.*, 66 F.3d 1436 (6th Cir. 1995) test, which requires that the movant make a demand upon the statutorily authorized party to take action.  *See In re Consol. Nev. Corp.*, Nos. NV-17-1210-FLTi, NV-17-1211-FLTi, 2017 Bankr. LEXIS 4393, at *18 (B.A.P. 9th Cir. Dec. 21, 2017) (listing cases).  "[A] valid demand must give the board of directors the opportunity to consider and act upon the proposed litigation by

James C. Mahan
U.S. District Judge

presenting to the board the ultimate facts of each cause of action and the action which plaintiff wishes the board to take to remedy the alleged wrongdoing." *Potter*, 546 F.3d at 1056.

Infogroup argues that the bankruptcy court abused its discretion when it failed to apply the "mere formality" demand standard promulgated by the Eighth Circuit.  (ECF No. 23 at 52).  Yet, it is not clear error for the bankruptcy court to decline to apply another circuit's standard.  Further, Infogroup's argument that its objections and authority motion contain sufficient content are tenuous at best under the Ninth Circuit's more stringent standard.  (*See* ECF No. 23 at 19–21).  Thus, it is not clear error for the bankruptcy court to have determined that Infogroup's alleged demands were insufficient under Rule 23.1.

### 2. The bankruptcy court abused its discretion by not considering demand futility

However, the bankruptcy court did not specifically consider whether Infogroup's demand would have been futile.  *See Greenspun*, 634 F.2d at 1209.  If Infogroup's demand was futile, its failure to make a demand does not prohibit it from gaining the authority to pursue derivative actions.  *Id.*  Thus, the bankruptcy court's failure to address futility in the authority order constitutes clear error.

The Ninth Circuit has held that demand futility "must be decided by the trial court on a case-by-case basis and not by any rote and inelastic criteria." *Towers v. Iger*, 912 F.3d 523, 528 (9th Cir. 2018) (quoting *Rosenbloom v. Pyott*, 765 F.3d 1137, 1148 (9th Cir. 2014)).  Thus, as the bankruptcy court is better prepared to hear arguments and make determinations regarding demand futility, this court VACATES the authority order and REMANDS this matter for further proceedings on the authority motion.[6]

### B. The bankruptcy court abused its discretion by failing to review the compromise order with rigorous scrutiny

Infogroup argues that the bankruptcy court abused its discretion by applying the wrong legal standard to determine the adequacy of the settlement and by approving the settlement despite legally prohibited components.  (ECF No. 23 at 34).  Specifically, Infogroup argues that

---

[6] Should the bankruptcy court determine on remand that Infogroup can pursue the derivative actions, it should also determine whether cause exists to toll the statute of limitations to permit Infogroup to file the adversary complaint.  *See* FED. R. BANKR. P. 9006(b); 11 U.S.C. §§ 108, 546.

James C. Mahan
U.S. District Judge

- 7 -

1    the bankruptcy court failed to apply a "rigorous scrutiny" standard, rather than a general "good

2    faith" standard, to the compromise motion even though the settlement involved an "insider,"

3    Everest.  This court agrees.

4        A bankruptcy court may approve of a compromise or settlement when the compromise is

5    fair and equitable after having weighed the likely rewards of litigation against the costs and

6    difficulties of any claim litigation.  FED. R. BANKR. P. 9019(a); *Protective Comm. for Indep.*

7    *Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–25 (1968).

8        A compromise order should be overturned when it is "neither in the best interests of the

9    estate nor fair and equitable for creditors."  *In re MGS Mktg.*, 111 B.R. 264, 266–67 (9th Cir.

10   BAP 1990).  However, insider dealings with a debtor are subjected to rigorous scrutiny.  *Pepper*

11   *v. Litton*, 308 U.S. 295, 306 (1939); *In re Marquam Inv. Corp.*, 942 F.2d 1462, 1465 (9th Cir.

12   1991).  When the insider has a fiduciary duty to the debtor, the transaction must be subject to

13   rigorous scrutiny.  *Stoumbos v. Kilimnik*, 988 F.2d 949, 959 (9th Cir. 1993).

14       Here, Everest is an "insider" because Everest owns 90.13% of debtor.  *See* 11 U.S.C. §

15   101(31)(E); 11 U.S.C. § 101(2); (ECF No. 34-1 at 53).  Thus, the bankruptcy court was required

16   to apply the rigorous scrutiny standard to its review of the compromise motion.  Yet, the

17   bankruptcy court made no mention of the rigorous scrutiny standard in the compromise order.

18       Viewing the compromise motion under rigorous scrutiny, the settlement conferred unfair

19   advantages and benefits to Everest, an insider, which are inconsistent with applicable law.  For

20   example, allowing Everest to credit-bid the full amount of its under-secured claim ostensibly

21   allows Everest and debtor to shuffle around assets so debtor can avoid paying the judgment it

22   owes to Infogroup.[7]

23

24       [7] On February 6, 2018, Everest filed a UCC-1 statement that described collateral as a
     commercial tort claim.  (ECF No. 31 at 19).  Yet, that description is insufficient to create a
25   security interest.  *See* NEV. REV. STAT. § 104.9108(5)(A).  Therefore, Everest does not have a
     valid security interest in the commercial tort claim.  As such, the amount of the commercial tort
26   claim, as it pertains to the allowed secured claim should be reduced to the extent that Everest has
     no lien in the commercial tort claim.  However, without a lien, the value of this commercial tort
     claim cannot be calculated into the allowed secured claim that Everest can credit-bid.  *See* 11
27   U.S.C §§ 363(k); 502(a).  Because it allows an under-secured creditor to receive a distribution
     more than what the Bankruptcy Code allows and debtor appears to be preferring an insider
28   creditor, the settlement is not fair and equitable.  *See In re Fryar*, 570 B.R. 602, 605 (Bankr. E.D.
     Tenn. 2017).

James C. Mahan
U.S. District Judge

- 8 -

1
2
3
4
5
6

Further, the disputed issues underlying the compromise motion have a probability of successful litigation which could greatly benefit the estate.[8]   For example, the preferential transfer claim is supported by the record because the February 1, 2018, security amendments constituted a transfer in interest to Everest for antecedent debt, happened within a year of the bankruptcy while debtor was insolvent, and likely provided Everest a greater distribution than it would have received in a liquidation.  *See* 11 U.S.C. § 547(b).

7
8
9

Therefore, there is a definite and firm conviction that the bankruptcy court committed clear error in concluding that the compromise motion was fair and equitable.  *See In re Murray, Inc.*, 392 B.R. 288, 296 (9th Cir. BAP 2008).

10

Accordingly, this court REVERSES the bankruptcy court's compromise order.

11

C.  This court does not have jurisdiction over the appeals of the contempt and sanctions orders

12
13
14
15
16

District courts have jurisdiction of appeals from final orders of bankruptcy courts.  28 U.S.C. § 158(a)(1).  A bankruptcy court order is final and thus appealable "where it 1) resolves and seriously affects substantive rights and 2) finally determines the discrete issue to which it is addressed." *SS Farms, LLC v. Sharp* (*In re SK Foods, L.P.*), 676 F.3d 798, 802 (9th Cir. 2012) (quoting *Dye v. Brown* (*In re AFI Holding, Inc.*), 530 F.3d 832, 836 (9th Cir. 2008)).

17
18
19
20
21

Typically, contempt and sanctions orders are not final judgments for purposes of appeal. *See Koninklijke Philips Elecs., N.V. v. Kxd Tech., Inc.*, 539 F.3d 1039, 1042 (9th Cir. 2008). While an order of civil contempt imposing sanctions for violating a prior final judgment can be a final order, it is so only when that contempt proceeding is the sole proceeding before the district court.  *See Shuffler v. Heritage Bank*, 720 F.2d 1141, 1145 (9th Cir. 1983).

22
23
24
25
26

Here, the contempt and sanctions proceedings were not the sole proceedings before the bankruptcy court nor the sole proceedings before this court.  (*See* ECF Nos. 1, 43).  Therefore,

27
28

---

[8]  The compromise order consists of claims from Infogroup's proposed adversary complaint including avoidance, preferential transfer, fraudulent transfer, equitable subordination, and others.  (*See* ECF No. 23 at 22).

James C. Mahan
U.S. District Judge

this court does not have appellate jurisdiction over the civil contempt and sanctions orders issued during the parties' continuing bankruptcy proceedings.[9]

Accordingly, the court DISMISSES Infogroup's appeals of the contempt and sanctions orders (ECF Nos. 42; 43) for lack of jurisdiction.

**IV.    Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the bankruptcy court's authority order be, and the same hereby is, VACATED.

IT IS FURTHER ORDERED that the bankruptcy court's compromise order, be, and the same hereby is, REVERSED.

IT IS FURTHER ORDERED that Infogroup's appeals of the bankruptcy court's contempt and sanctions orders (ECF Nos. 42; 43), be, and the same hereby are, DISMISSED for lack of jurisdiction.

IT IS FURTHER ORDERED that this matter be, and the same hereby is, REMANDED to the bankruptcy court for further proceedings consistent with this order.

IT IS FURTHER ORDERED that that pursuant to Federal Rule of Bankruptcy Procedure 8021(a)(4), Infogroup shall be awarded costs as taxed against the appellees for the reversal of the compromise order.

DATED April 15, 2022.

UNITED STATES DISTRICT JUDGE

---

[9] Infogroup mistakenly argues that the contempt and sanctions orders operated as final judgements regarding Infogroup's derivative claims.  As previously stated, the bankruptcy court may toll the time to file the derivative action should it decide on remand to grant the authority motion.  *See supra* note 6.

James C. Mahan
U.S. District Judge

- 10 -